UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:10-CR-34 |
| vs. | ) | |
| | ) | |
| LEVAR WILLIAMS | ) | COLLIER/CARTER |

REPORT AND RECOMMENDATION

Defendant Levar Williams' motion to suppress evidence from interception of wire communications [Doc. 330] is before the undersigned Magistrate Judge for a report and recommendation having been referred by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) & (C). The undersigned is asked to consider: 1) whether the government proved necessity, as constitutionally and statutorily required and 2) whether the affidavit in support of the intercept order was based on sufficient and /or reliable evidence. For reasons that follow, I conclude the government met its burden on both of those issues and therefore RECOMMEND defendant's motion to suppress evidence from interception of wire communications be DENIED.

I. Background

The wiretap order approving interception which is the subject of this motion was signed on December 23, 2009 by United States District Judge Harry S. Mattice, Jr. Special Agent Frank C. Ledford of the Drug Enforcement Administration (DEA), Field Office in Chattanooga, Tennessee gave the affidavit used to obtain the wiretap at issue. Some of the information contained in the affidavit came from Sammy McNelley, a former agent with the 10th Judicial Drug Task Force. Concerning Sammy McNelley, SA Ledford stated:

> Sammy McNelley had originally prepared an affidavit for the interception of wire and electronic communications in this case. He was recently terminated from his employment with the Tenth Judicial Drug Task Force, which disqualified him from further participation as a DEA Task Force officer. My understanding is that he was terminated for causing "dissension" within the Tenth Judicial Drug Task Force and for improper use of a Task Force-issued cell phone. I do not have reason to believe that McNelley has been dishonest or committed a crime. At this writing, McNelley is appealing the decision to terminate his employment. McNelley was the DEA "case agent" for the investigation discussed herein and I have relied extensively on information provided by him for this affidavit. In my opinion, the integrity of all aspects of the investigation, including the matters discussed in this affidavit, is sound.

Ledford Affidavit Doc. 137-1, p4 n.1.

## II. Analysis

Defendant seeks suppression of evidence derived from the federal court authorized wiretap. I will address the two issues presented.

### A. Necessity

Defendant argues the wiretap affidavit fails to establish necessity. In order to obtain a wiretap, the government must overcome the statutory presumption against this intrusive investigative method by proving necessity. *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001). According to 18 U.S.C. §2518(1)(c), the government may establish necessity for a wiretap by any of three alternative methods. In order to demonstrate the "necessity" of the wiretap, the government must provide a "full and complete" statement that traditional investigative procedures (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) are too dangerous to try. *United States v. Gonzalez. Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005).

This "necessity" requirement, is designed to ensure that

wiretaps are not to be used thoughtlessly or in a dragnet fashion. As our court has said, what is needed is to show that wiretaps are not being 'routinely employed as the initial step in criminal investigation.' However, the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted.

*Alfano*, 838 at 163 (quoting *United States v. Giordano*, 416 U.S. 505, 515 (1974)). The necessity requirement is "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Robertson*, 504 F.2d 289, 293 (5th Cir.1974). "The requirement that there be disclosure as to the use, success, and potential success of other investigative techniques, however, does not mean 'that any particular investigative procedures [must] be exhausted before a wiretap may be authorized.'" *United States v. Young*, 822 F.2d 1234, 1237 (2nd Cir.1987). A wiretap authorization order is presumed proper, and a defendant carries the burden of overcoming this presumption. *United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir. 1995). The Sixth Circuit has explained the requirements of the necessity provisions for the Title III statute:

> These provisions do not require that the police officials exhaust every conceivable non-wiretap investigative technique. All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate.

*United States v. Lambert*, 771 F.2d 83 (6th Cir. 1985) (citations omitted).

The Sixth Circuit has recognized the unique value of the wiretap in fully investigating telephone-dependent criminal conspiracies:

> [T]he mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance. We have previously recognized that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal

3

enterprise under investigation." *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir.1977) (quoting *United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir.1975)).

*United States v. Stewart*, 306 F.3d 295, 305-06 (6th Cir. 2002).

The defendant's challenge, based on lack of necessity, rests on facts contained in the affidavit. He points out that numerous controlled purchases of drugs from him and others, as well as physical surveillance, had established, prior to the wire intercepts, viable cases against the defendant and those others. The defendant states that investigators had become aware of three separate possible sources of supply for drugs to him prior to the wiretap. But the reality is that there was no case existing against one of the defendant's sources, named co-defendant Demetrius Byrd, prior to the wiretap, and the wiretap itself established the *absence* of viable cases against others presumed to have been the defendant's suppliers. Moreover, the government argues the wiretap established that the amounts of drugs the defendant obtained and distributed were actually smaller than what had been presumed based upon the pre-wiretap investigation. In investigating a conspiracy case, the "necessity for the wiretap is evaluated in light of the government's need not merely to collect some evidence, but to 'develop an effective case against those involved in the conspiracy.'" *United States v. Decoud*, 456 F.3d 996, 1007 (9th Cir.2006) (quoting *United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir.1986)). Thus, courts will find "necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of ... other satellite conspirators.'" *United States v. McGuire*, 307 F.3d 1192, 1198 (9th Cir. 2002) (quoting *United States v. Torres*, 908 F.2d 1417, 1422 (9th Cir. 1990)).

The Affidavit in support of the wiretap specifically addresses the issue of necessity in paragraphs 92 through 95 [Affidavit, Doc 352-1, pp. 51-52]:

> 92. Based on my training and experience, it is my belief that the interception of wire and electronic communications over TT1, used in conjunction with other investigative techniques, is the only available mechanism with a reasonable likelihood of identifying the entire organization operating in Cleveland and Chattanooga, Tennessee, and elsewhere. This method will also assist agents in attaining the sources of the organization's illegal drugs, which is believed to be based in Chattanooga, Tennessee. It is likely that suppliers in Chattanooga are supplied by a person or persons in a larger source city; typically in this area, Atlanta, Georgia. I am aware of other drug investigations in which Chattanooga-based cocaine Sources of Supply received cocaine from Texas and from Nashville, Tennessee, as well. It is my belief that the interception of said wire and electronic communications is the only available technique with a reasonable likelihood of securing the evidence necessary to prove beyond a reasonable doubt that the listed members and others yet unknown, including sources of supply for drugs, are engaged in the above-described offenses. It is my belief that the interception of wire and electronic communications will produce evidence that will identify stash houses, sources of supply, and the specifics of the transportation of controlled substances. Numerous investigative procedures that are usually employed in investigations of this type of criminal case have been tried and failed, reasonably appear unlikely to succeed or have minimal success if they are tried, or are too dangerous to employ.
>
> 93. The interception of wire and electronic communications on TT1 is the only effective way investigators can positively identify the source(s) of supply for this organization and other co-conspirators involved in the distribution of controlled substances.
>
> 94. The principle investigative goals of the requested monitoring of wire and electronic communications include the identification of all of the individuals involved in this drug trafficking organization, the structure and elements of the organization in which WILLIAMS and others appear to be participants, as well as the source(s) of supply of cocaine base (crack cocaine) being trafficked by the targets of this investigation. The investigative goals include acquiring sufficient evidence to make prosecutable cases against the participants in the organization as well as the suppliers to the organization. The organization's immediate sources of supply appear to be in Chattanooga, Tennessee. Currently, investigators know very little about the full scope of the criminal activity of such persons and there is at this time insufficient evidence to proceed to prosecution against the suspected

suppliers, according to the Assistant United States Attorney with whom I have consulted in this case. The requested Court authorization would enable investigators to pursue these sources of supply which, to date, have been beyond positive identification and/or prosecution.

95. All of the above named interceptees have been linked to telephones that appear on the pen register activity for TT1. The frequency and the duration, as well as the content where available, of the calls, demonstrate, in my opinion, that TTI is in contact with the other telephones for the purpose of furthering illegal activity; specifically, the listed offenses above.

The unavailability of alternative investigative techniques is set out in pages 52-63 of the Affidavit in paragraphs 96-112.

I conclude that this information, specifically set out in the affidavit, adequately addresses the necessity requirement and therefore Defendant's argument fails.

B. Probable Cause

Next, defendant argues the affidavit lacks sufficient reliable evidence to support probable cause for the wiretap. Specifically, defendant argues that "if, in fact, SA Ledford has relied heavily on Mr. McNelley, as seems to be indicated, for the interpretation of important conversations and evidence, then the credibility and reliability of Mr. McNelley is a critical issue" in determining whether the affidavit supports probable cause. (Defendant Williams' Supporting Memorandum at 7, Doc. 331). Defendant has produced no information to indicate that SA McNelley was untruthful or unreliable, and SA Ledford is entitled to rely on information from fellow officers in preparing an affidavit. *See e.g., United States v. McPhearson*, 469 F.3d 518, 525 n. 3 (6th Cir. 2006) ("where the allegation of drug dealing is coupled with independently corroborated information from police officers, it may be sufficient to establish probable cause.") I conclude the fact that SA McNelley was later terminated for "causing

6

dissension" and improper use of a cell phone does not in any way undermine the sufficiency or reliability of the information presented in the affidavit.

I will now examine whether the affidavit itself sets forth probable cause. The United States Court of Appeals for the Sixth Circuit has stated that "[t]he basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520." *United States v. v. Alfano*, 838 F.2d 158, 161-62 (6th Cir. 1988); *see also United States v. Weinrich,* 586 F.2d 481, 487 (5th Cir.1978); *United States v. Feldman*, 535 F.2d 1175 (9th Cir.1976). The *Alfano* court further discussed what standards were necessary to be in compliance:

> That Act was enacted for the purpose of regularizing and controlling the issuance of warrants for wiretaps. At the same time, we are instructed that there is no specific formula that must be met for a warrant, and that evidence must be judged on the totality of the circumstances and in a reasonable and common sense manner. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Under this standard, the question that must be decided in issuing a warrant is whether there is probable cause to believe that evidence of a crime will be uncovered.

*Alfano*, 838 F.2d at 161-62. Stated another way, for the issuance of a wiretap order, probable cause is present if the totality of the circumstances reveals that there is a fair probability that a wiretap will uncover evidence of a crime. *United States v. Fairchild*, 189 F.3d 769, 775 (8th Cir. 1999); *United States v. Giacalone*, 853 F.2d 470, 478 (6th Cir. 1988); *United States v. LaPuma*, No. 88-2237, 1989 WL 125242 (6th Cir. Oct. 23, 1989); *United States v. O'Leary*, No. 86-5396, 1987 WL 36581, at 3 (6th Cir. Jan. 7, 1987).

Within the affidavit, the following interceptees were named: Levar O. Williams, Adrius S. Hickey, Everett Hollins, III, Dante Hickey, Omar Gash, Tynise Waters, Joshlyn Martin, and Tony O. Hughes, and "others, having committed, are committing, and will continue to commit

7

offenses" involving conspiracy to distribute and possess controlled substances, distribution of controlled substances, use of communication facilities, laundering of money, interstate travel in aid of racketeering, the illegal possession of firearms, and aiding and abetting the mentioned offenses (See Affidavit, Doc. 352-1, pp. 4-5). In general, the affidavit stated the affiant and other law enforcement officers from the DEA and the Cleveland Police Department had been conducting an investigation into "large scale drug trafficking organization based in Bradley County, Tennessee involving Levar Williams." (See Affidavit, Doc. 352-1, pp. 13). The affidavit stated that Williams had been identified as a distributor and was a source of supply for distributors in Bradley County. *Id.* The interceptees mentioned above were also listed as members of the alleged drug trafficking organization. *Id.* Beginning on page 13, the affiant listed certain activities of confidential sources identified as CS1 and CS2. In general, the affidavit discussed various activities which included, but are not necessarily limited to, 25 controlled purchases of crack and 10 monitored and recorded conversations with Williams and interceptors. (See *Id.* at pp. 13-14). The affidavit stated that CS1 had been a confidential source for the Cleveland Police Department beginning June 2009 until the date of the affidavit. CS1 had also "signed up" as a confidential source for the DEA on July 9, 2009. The affidavit provided an assertion and purported basis for CS1's reliability (See *Id.* at 14). The affidavit also stated that CS2 had monitored telephone conversations with Williams and interceptors and had been interviewed on multiple occasions by relevant law enforcement agencies (*Id*. at 14). The affidavit also asserted CS2's reliability and the purported basis for such a conclusion.

Beginning on page 15 of the affidavit, a section labeled "The Investigation" can be found which provides certain details including transcribed communications allegedly recorded when

8

CS1 wore a recording device at controlled buys and conversations with co-defendants. Beginning on page 29 of the affidavit, there is a description of events taking place on August 4, 2009 during which Williams is allegedly taken to meet his source of supply or "SOS." Per the description, the SOS drove a 2004 black Chevrolet Z-71 four-door pickup bearing Tennessee registration 785RPZ registered to Morgan Motor Company (*Id*. at p. 30; see also p. 31). The affidavit further states on page 32 that photographs were clandestinely taken of the SOS in an August 6, 2009 meeting. On pages 32 and 33, another alleged SOS is described as living at 5510 O'Leary Street, Chattanooga, Tennessee. Yet another SOS is described as driving a four-door gray colored Honda bearing Tennessee registration 699CQF, registered to Seabron Battle, with a known address (*Id*. at p. 33). On page 35, the affidavit appears to identify the principal SOS as Juanzell Jenkins and an associate named Lemont "Boone" Patterson, both with known addresses (*Id*. at 35).

        I conclude the numerous controlled buys and the other surveillance information, provided ample probable cause for the issuance of the Wiretap.

IV. Conclusion

For the reasons stated, I conclude and therefore RECOMMEND[1] defendant's motion to suppress evidence from interception of wire communications [Doc. 330] be DENIED.

                                         s/William B. Mitchell Carter
                                         UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).