UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:10-CR-34 |
| v. ) | |
| ) | Collier/Carter |
| LEVAR WILLIAMS ) | |

**MEMORANDUM**

Defendant Levar Williams ("Defendant") moved to suppress evidence from intercepted wire communications (Court File No. 330). This motion was referred to United States Magistrate Judge William B. Mitchell Carter, who subsequently filed a report & recommendation ("R&R"), recommending Defendant's motion be denied (Court File No. 357). Defendant filed an objection (Court File No. 362), and the government responded (Court File No. 372). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 357). Accordingly, Defendant's motion to suppress will be **DENIED** (Court File No. 330).

**I.    RELEVANT FACTS**

There are no relevant facts in dispute here. On December 23, 2009, United States District Judge Harry S. Mattice, Jr. signed a wiretap order approving interception of wire and electronic communications. Special Agent Frank C. Ledford of the Drug Enforcement Administration ("DEA") gave the affidavit used to obtain the wiretap at issue. The affidavit stated that SA Ledford and other law enforcement officers from the DEA and the Cleveland Police Department had been conducting an investigation into a large scale drug trafficking organization based in Bradley County, Tennessee, involving Defendant. The affidavit identified Defendant as a distributor and source of supply for distributors in Bradley County.

Some of the information in the affidavit came from Sammy McNelly, a former agent with the 10th Judicial Drug Task Force. Concerning McNelly, SA Ledford stated:

> Sammy McNelly had originally prepared an affidavit for the interception of wire and electronic communications in this case. He was recently terminated from his employment with the Tenth Judicial Drug Task Force, which disqualified him from further participation as a DEA Task Force officer. My understanding is that he was terminated for causing "dissension" within the Tenth Judicial Drug Task Force and for improper use of a Task Force-issued cell phone. I do not have reason to believe that McNelly has been dishonest or committed a crime. At this writing, McNelly is appealing the decision to terminate his employment. McNelly was the DEA "case agent" for the investigation discussed herein and I have relied extensively on information provided by him for this affidavit. In my opinion, the integrity of all aspects of the investigation, including the matters discussed in this affidavit, is sound.

(Court File No. 352-1, p. 4 n.1).

Information obtained through use of the wiretap obtained via SA Ledford's affidavit implicated Defendant in drug trafficking.

## II.   STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made, 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III. DISCUSSION

Defendant's objections to the R&R essentially repeat his basic arguments on the motion to suppress: 1) the wiretap affidavit fails to establish the "necessity requirement" for wiretaps under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518 ("Title III"); and 2) the affidavit was based on insufficient or unreliable evidence, namely, evidence obtained through reliance on McNelly.

### A. Necessity

Title III requires "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002) (quoting 18 U.S.C. § 2518(1)(c)). This "necessity requirement" exists "to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007) (quoting *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988)). The requirement "protects against the impermissible use of a wiretap as the 'initial step in [a] criminal investigation.'" *Id.* (quoting *United States v. Giordano*, 416 U.S. 505, 515 (1974)).

The necessity requirement does not require the government "to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Alfano*, 838 F.2d at 163. Instead, "[a]ll that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985).

3

In making this determination, a court "may properly take into account affirmations which are founded in part upon the experience of specially trained agents," as long as the allegations in the affidavit contain some factual relation to the circumstances at hand. *United States v. Ashley*, 876 F.2d 1069, 1072 (1st Cir. 1989); *accord United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977).

The Sixth Circuit has recognized that wiretaps may be uniquely valuable in investigating telephone-dependent criminal conspiracies:

> [T]he mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance. We have previously recognized that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation."

*United States v. Stewart*, 306 F.3d 295, 305 (6th Cir. 2002) (quoting *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977).

Defendant attacks the Magistrate Judge's finding of necessity by recounting the many pre-wiretap successes of the investigation. Specifically, he points out that through controlled purchases, recorded conversations, and surveillance of Defendant and suspected suppliers, the government had already built a viable case against Defendant prior to seeking a wiretap order. Because the government could have prosecuted Defendant without a wiretap, Defendant argues the wiretap was literally not "necessary."

However, as the Magistrate Judge properly recognized, the pre-wiretap viability of a case against a defendant does not foreclose the possibility of properly obtaining a wiretap order. The "necessity for the wiretap is evaluated in light of the government's need not merely to collect some evidence, but to develop an effective case against those involved in the conspiracy." *United States*

4

*v. Decoud*, 456 F.3d 996, 1007 (9th Cir. 2006).

Here, the 63-page affidavit plainly and plausibly described proper investigatory ends which could not be reasonably furthered simply through the traditional investigatory techniques employed to date. The R&R quotes these sections at length, and they will not be repeated here. Briefly, however, the affidavit emphasized that a wiretap was the only mechanism with a reasonable likelihood of identifying Defendant's *entire drug trafficking organization*. While controlled purchases had implicated Defendant as a distributor, and traditional surveillance had identified several possible suppliers, the affidavit stated officers were unsure of many of the specifics of the trafficking network, such as where stash houses were located and precisely who supplied Defendant. The affidavit further revealed that officers did not aim simply at prosecuting Defendant, but at making prosecutable cases against Defendant, his co-conspirators, and his suppliers, some of whom the government had not been able to positively identify through traditional means. In short, while traditional techniques, such as the use of confidential informants, surveillance, and interviews with associates, were able to uncover much of the street-level criminal activity of the conspiracy, they were not able to peer into the higher-order operational interactions between Defendant and his co-conspirators and suppliers.[1] Defendant's objection ignores this reality insofar as it stresses law enforcement officials could have arrested and prosecuted Defendant well before seeking the wiretap.

---

[1] The Court notes that the results of the wiretap bear this out. As the Magistrate Judge noted, and Defendant does not contest: prior to the wiretap there was no case against one of the Defendant's sources, named co-defendant Demetrius Byrd; the wiretap established the *absence* of viable cases against others presumed to have been Defendant's suppliers; and the wiretap established that the amounts of drugs Defendant obtained and distributed were actually *less* than what had been presumed based upon the pre-wiretap investigation.

The affidavit makes clear officers did not impermissibly "use [] a wiretap as the initial step in [a] criminal investigation" in this case. *Rice*, 478 F.3d at 710. Instead, the officers sought a wiretap only after "giv[ing] serious consideration to" – and indeed, employing – "non-wiretap techniques," *Lambert*, 771 F.2d at 91, and thereafter determining such techniques would not reasonably "suffice to expose the [entire] crime." *Rice*, 478 F.3d at 710. The Court thus finds the affidavit adequately addresses the necessity requirement of Title III, and Defendant's objection therefore fails.

**B.     SA Ledford's Reliance on McNelly**

Defendant also objects to the Magistrate Judge's finding SA Ledford was justified in relying upon information provided him by McNelly when drafting the affidavit. In Defendant's view, the fact McNelly had been fired implicates his reliability, and made it reckless for SA Ledford to rely on information provided by him.

Although Defendant does not put it this way, his argument is essentially that McNelly's unreliability means there was not probable cause for the wiretap to issue.     Under Sixth Circuit law, "[t]he basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III . . . ." *Alfano*, 838 F.2d at 161. *Alfano* provided the standard for determining probable cause under Title III:

> [T]here is no specific formula that must be met for a warrant, and that evidence must be judged on the totality of the circumstances and in a reasonable and common sense manner. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Under this standard, the question that must be decided in issuing a warrant is whether there is probable cause to believe that evidence of a crime will be uncovered.

*Id.* at 161–62. That is, there must be a "fair probability," but more than a "mere suspicion," that a wiretap will discover particular evidence of a crime. *Id.* at 162. Additionally, because "the issuing

6

judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, 'great deference' is normally paid to the determination of an issuing judge." *Id.*; *accord United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000).

Information contained in an affidavit "need not reflect the direct personal observations of a law enforcement official and may be based on . . . hearsay, so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable." *United States v. Williams*, 224 F.3d 530, 532 (2000). The issuing judicial officer must be able to "conclude from the totality of the circumstances, 'including the 'veracity' and 'basis' of knowledge of persons supplying hearsay information, [that] there is a fair probability that contraband or evidence of a crime will be found.'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Here, Defendant argues SA Ledford could not reasonably rely on McNelly in constructing the affidavit since McNelly had been fired. Hence, suggests Defendant, the affidavit failed to establish probable cause. This argument is unavailing. Defendant has produced no information indicating McNelly was untruthful, unreliable, or otherwise lacked credibility, and he has identified no falsehoods in the affidavit. SA Ledford's affidavit indicated his understanding McNelly had been terminated for causing "dissension," and for improper use of his work cell phone.[2] There is simply no reason to think McNelly's termination for cell phone abuse and general contentiousness meant it was unreasonable for SA Ledford to rely on McNelly to provide accurate information on a case McNelly had been investigating. To conclude otherwise would be an exercise of pure speculation.

---

[2]Defendant has submitted McNelly's termination documents, which SA Ledford had apparently not seen when he drafted the affidavit. These documents show SA Ledford's understanding of McNelly's termination was essentially correct: McNelly was terminated, in large part, because he persistently used his work cell phone for private commercial purposes (even listing its number on billboards), and also because he stirred up dissension regarding others' promotions.

7

Moreover, Defendant himself acknowledges the numerous controlled purchases and other investigative activity undergirding the government's application for a wiretap. Indeed, when arguing the affidavit did not establish a wiretap was "necessary," Defendant recites the significant evidence, *as stated in the affidavit*, which could have supported pre-wiretap prosecution against Defendant. Yet this very evidence, which included controlled purchases, observations of Defendant with suspected suppliers, and recorded conversations, supported the conclusion that a wiretap would probably reveal evidence of a drug trafficking conspiracy.[3] Put simply, the description of prior investigative activity in the affidavit provided ample probable cause for the issuance of a wiretap, which McNelly's unrelated termination did not undermine.

### IV. CONCLUSION

After reviewing the record, the Court finds the Magistrate Judge properly concluded the affidavit supporting the wiretap established the necessity of the wiretap, and there was probable cause for the wiretap, SA Ledford's reliance on McNelly notwithstanding. As such, the wiretap order was properly issued. Accordingly, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 357). Defendant's motion to suppress will be **DENIED** (Court File No. 330).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[3] Incidentally, SA Ledford's affidavit reveals he independently reviewed audio recordings of controlled transactions involving Defendant, as well as extensive pen register records which suggested Defendant was using his phone in furtherance of drug trafficking.